## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

### TALLAHASSEE DIVISION

#### CASE NO.: 1:22-cv-34

**EILEEN PARKER, as the Personal
Representative of THE ESTATE OF
AARON  MICHAEL  PARKER,
Plaintiff,**

**v.**

**THE CITY OF TALLAHASSEE,
a political subdivision of
the State of Florida;
DAVID NORTHWAY, Individually;
STEPHEN SHIELDS, Individually
STEPHEN DEUTSCHMAN, Individually;
DOUGLAS KUTCHERA, Individually;
TRENT ROBERTS, Individually;
CHRISTOPHER ROTH, Individually;
RUSSELL SCHNEIDER, Individually;
ROBERT CLAYTON, Individually;
CLIFFORD CROUCH, Individually.**

_____/

### COMPLAINT

    **COMES  NOW,** the Plaintiff, EILEEN PARKER, as the Personal

Representative of the Estate of AARON  MICHAEL  PARKER, by and through

her undersigned counsel, and files this Complaint against the CITY OF

TALLAHASSEE a political subdivision of the State of Florida, who operates the

Tallahassee  Police  Department  and  DAVID  NORTHWAY,  individually;

STEPHEN SHIELDS, individually, STEPHEN DEUTSCHMAN, individually;

DOUGLAS KUTCHERA, individually; TRENT ROBERTS, individually; CHRISTOPHER ROTH, individually; RUSSELL SCHNEIDER, individually ROBERT CLAYTON, individually and CLIFFORD CROUCH, individually, through his Estate, for acts that occurred during the course and scope of their employment with the CITY OF TALLAHASSEE, seeking compensatory and punitive damages from Defendants for violating AARON MICHAEL PARKER'S civil rights under the United States Constitution and state law in connection with the excessive force used against him during the unlawful detention that resulted in his death.

## I.  IDENTIFICATION OF PARTIES

1. The Decedent is AARON MICHAEL PARKER, who died on February 18, 2018, in Tallahassee, Leon County, Florida.

2. Plaintiff, EILEEN PARKER, is an adult domiciled in the State of Florida, Brevard County. On April 25, 2021, the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida, issued Amended Letters of Administration, appointing EILEEN PARKER as Personal Representative of the ESTATE OF AARON MICHAEL PARKER. EILEEN PARKER asserts a claim on behalf of the ESTATE and survivors as law permits.

3. Defendant, the CITY OF TALLAHASSEE (hereinafter, "CITY"), is a political subdivision of the State of Florida. The CITY, at all times material

to this action, was and is a governmental entity charged with administering and overseeing the City of Tallahassee Police Department (hereinafter "TPD") located in Leon County, Florida.

4. Defendant DAVID NORTHWAY (hereinafter "NORTHWAY") is a citizen of the State of Florida, is over the age of 18 years, is *sui juris*, and at all times material to this action is being sued individually but was acting under color of law by virtue of his employment with the Tallahassee Police Department, and at all times acted pursuant to regulations and policies of the Tallahassee Police Department, with the rank of Sergeant. NORTHWAY is sued in his individual capacity.

5. Defendant STEPHEN SHIELDS (hereinafter "SHIELDS") is a citizen of the State of Florida, is over the age of 18 years, is *sui juris*, and at all times material to this action is being sued individually but was acting under color of law by virtue of his employment with the Tallahassee Police Department, and at all times acted pursuant to regulations and policies of the Tallahassee Police Department. Defendant SHIELDS is sued in his individual capacity.

6. Defendant STEPHEN DEUTSCHMAN (hereinafter "DEUTSCHMAN") is a citizen of the State of Florida, is over the age of 18 years, is *sui juris*, and at all times material to this action is being sued individually but was acting under color of law by virtue of his employment with the Tallahassee Police Department, and at all times acted pursuant to regulations and

policies of the Tallahassee Police Department. Defendant DEUTSCHMAN is sued in his individual capacity.

7. Defendant DOUGLAS KUTCHERA (hereinafter "KUTCHERA"), a citizen of the State of Florida, is over the age of 18 years, is *sui juris*, and at all times material to this action is being sued individually but was acting under color of law by virtue of his employment with the Tallahassee Police Department, and at all times acted pursuant to regulations and policies of the Tallahassee Police Department. Defendant KUTCHERA is sued in his individual capacity.

8. Defendant TRENT ROBERTS (hereinafter "ROBERTS") is a citizen of the State of Florida, is over the age of 18 years, is *sui juris*, and at all times material to this action is being sued individually but was acting under color of law by virtue of his employment with the Tallahassee Police Department, and at all times acted pursuant to regulations and policies of the Tallahassee Police Department. Defendant ROBERTS is sued in his individual capacity.

9. Defendant CHRISTOPHER ROTH (hereinafter "ROTH") is a citizen of the State of Florida, is over the age of 18 years, is *sui juris*, and at all times material to this action is being sued individually but was acting under color of law by virtue of his employment with the Tallahassee Police Department, and at all times acted pursuant to regulations and policies of

the Tallahassee Police Department. Defendant ROTH is sued in his individual capacity.

10. Defendant RUSSELL SCHNEIDER (hereinafter "SCHNEIDER"), a citizen of the State of Florida, is over the age of 18 years, is *sui juris*, and at all times material to this action is being sued individually but was acting under color of law by virtue of his employment with the Tallahassee Police Department, and at all times acted pursuant to regulations and policies of the Tallahassee Police Department. Defendant SCHNEIDER is sued in his individual capacity.

11. Defendant ROBERT CLAYTON (hereinafter "CLAYTON"), a citizen of the State of Florida, is over the age of 18 years, is *sui juris*, and at all times material to this action is being sued individually but was acting under color of law by virtue of his employment with the Tallahassee Police Department, and at all times acted pursuant to regulations and policies of the Tallahassee Police Department. CLAYTON is sued in his individual capacity.

12. Defendant CLIFFORD CROUCH (hereinafter "CROUCH") was a citizen of the State of Florida at the time of the incident and at the time of his death. He was over the age of 18 years at the time of his death, was *sui juris*, and at all times material to this action. He was acting under color of law by virtue of his employment with the Tallahassee Police Department and at all times acted pursuant to regulations and policies of the Tallahassee

Police Department. CROUCH is sued in his individual capacity through his Estate.

## II. <u>JURISDICTION AND VENUE</u>

13. This action is brought pursuant to 42 USC § 1983.

14. Jurisdiction is founded upon 28 USC § § 1331, 1343, and 1367.

15. Venue is proper in this Court, as the Defendants' actions alleged to have caused the death of AARON MICHAEL PARKER; additionally, PARKER'S death occurred in this district, the incident in question took place in this district, and the Defendants reside in this district.

## III.    <u>COMMON ALLEGATIONS OF FACTS</u>

16. AARON  MICHAEL  PARKER ("PARKER"), born April 15, 1997.

17. AARON  MICHAEL  PARKER died on February 18, 2018.

18. AARON  MICHAEL  PARKER was a resident of Brevard County, Florida, and temporarily living in Leon County, Florida, while attending college at the time of his death.

19. On February 9, 2018, Rhadisha Scurry, a Burger King cashier, called 911 requesting assistance at 1060 W. Tennessee Street, Tallahassee, Florida 32304. She reported that "*there is a w/m (white male) at this loc (location) dancing and laying on the ground naked- adv (advised) that he keeps falling and that he is currently humping the ground. "Caller adv (advised) that the male is singing and yelling*" at 10:41:52 p.m. per the Computer Aided Dispatch (CAD) report.

20. Defendant Officer DAVID NORTHWAY arrived at the scene at 10:44:42 p.m.  His report dated February 11, 2018, says that he parked his patrol car in the Burger King parking lot and walked to Tennessee Street as soon as he arrived at the scene.

21. Defendant NORTHWAY leaves his police vehicle parked in the Burger King parking lot. Per his report, he feared that AARON MICHAEL PARKER "*would either run into traffic or stumble into an oncoming vehicle.*"

22. Emergency Medical Technicians (EMT), Emily Lamb, Jason Bell, and Georgia Sallie of the Leon County Emergency Medical Services arrived at the scene at 10:46:59 p.m.

23. Defendant NORTHWAY reports that AARON  MICHAEL  PARKER appeared unaware of his surroundings. Defendant NORTHWAY requested traffic in both directions be stopped at 10:47:40 p.m., waiting over three minutes to request assistance or for the roads to be closed down in both directions.

24. Defendant STEPHEN SHIELDS arrived at the scene at 10:47:55 p.m, or after  Defendant NORTHWAY.

25. Emily Lamb assessed AARON  MICHAEL  PARKER at 10:47 p.m.

26. Defendant  NORTHWAY  requested  over  the  police  radio  that  the eastbound lanes of Tennessee Street be closed for his fear that AARON

MICHAEL PARKER will run into the traffic per the CAD report at 10:48:33 p.m.

27. Defendant Officer Russell SCHNEIDER arrived at the scene at 10:48:56 p.m.

28. The CAD report indicates that eastbound and westbound traffic lanes are blocked at 10:49:33 p.m.

29. CAD reports are silent as to the time Defendant CROUCH arrived on the scene. His sworn police report places him on the scene at "*approximately 10:39 p.m.*" However, the call for service from Rashida Scurry was not received by dispatch until 10:41 p.m. The CAD report shows CROUCH en route at 10:49:11 p.m. Per his report, "*four officers*" were on top of AARON MICHAEL PARKER.

30. Defendant SHIELDS reports, "*Sgt. Northway advised if the decedent attempted to run into traffic, then he would deployed its department-issued Taser.*" Defendant SHIELDS observed the following" *At approximately 2050 hours, Sgt. Northway #210 deployed his department issued Taser, and the decedent experienced immediate neuromuscular incapacitation.*"

31. Defendant NORTHWAY deployed his taser into AARON MICHAEL PARKER at 10:50:06 p.m., after both lanes of traffic were reported closed per the CAD report.

32. Within seconds, Defendant NORTHWAY changed his rationale for tasing him a second and third time. AARON MICHAEL PARKER was no

longer being tased because he was in "fear" for AARON MICHAEL PARKER'S safety, but now the rationale is that AARON MICHAEL PARKER is not complying with commands and deploys a second taser probe into AARON MICHAEL PARKER at 10:50:34 p.m.

33. Defendant Officer CHRISTOPHER ROTH arrived at the scene at 10:50:44 p.m.

34. Defendant Officer STEPHEN DEUTSCHMAN arrived at the scene at 10:50:50 p.m.

35. Defendant Officer STEPHEN DEUTSCHMAN #528 arrived and attempted to gain control of AARON MICHAEL PARKER'S left arm, and "*Sgt. Northway #210 then deployed a second pair of Taser probes and struck Tased the decedent a third time.*"

36. Lamb assessed AARON MICHAEL PARKER again, identifying that he is "*manually restrained by TPD officers in a prone position, and noted a "TAZER PROBE*" at 10:51 p.m.

37. Defendants KUTCHERA and Defendant ROBERTS arrived at approximately 10:52 p.m.

38. TPD Incident Detail report indicates that AARON MICHAEL PARKER is "*not calmed down yet*" at 10:54:32 pm.

39. Defendant SHIELDS report details*, "At approximately 2054 hours, the decedent was placed into the Excited Delirium pin."* Interestingly, his

report refers to AARON MICHAEL PARKER as the "decedent," although he did not die for six days after the SHIELDS report was allegedly written.

40. Per medical reports, EMS personnel Emily Lamb administered medication to AARON MICHAEL PARKER at 10:54 p.m. Defendant NORTHWAY's reported that several shots were administered to AARON MICHAEL PARKER. Defendant NORTHWAY says, "*After approximately 10-15 minutes, PARKER was calm enough to be moved into the ambulance.*"

41. This time frame puts AARON MICHAEL PARKER held down by police for up to twenty (20).

42. Lamb assessed AARON MICHAEL PARKER again, identifying that he was unconscious, unresponsive, cold, respiratory rate as shallow, no eye movement, no verbal response, and no motor responses at 11:08 p.m.

43. Lamb's reassessment of AARON MICHAEL PARKER at 11:09 p.m. identified that he was "*unconscious, unresponsive, secured supine on Reeves sleeve/stretcher, bilateral cuffs, pupils measuring 7mm, pale skin, diaphoretic, cold, cyanotic TAZER PROBE, respiratory rate zero, no verbal/vocal response, a pulse is zero, no eye movement when assessed, no motor response.*"

44. Per medical records, AARON MICHAEL PARKER was given cardiopulmonary resuscitation (CPR) and intubated at 11:10 p.m.

45. AARON  MICHAEL  PARKER is in the ambulance receiving CPR at 11:11:49 p.m. per the CAD report.

46. Procedures were further performed to revive AARON  MICHAEL PARKER en route to the hospital until arriving at Tallahassee Memorial Hospital via ambulance at 11:27 p.m.

47. The Leon County Sheriff's Office (LCSO) captured a portion of events leading up to AARON MICHAEL PARKER being tased Defendant NORTHWAY.

48. The aerial footage places Defendant NORTHWAY on foot, in the center lane of travel when the video begins at 22:52:40. At 22:55:38, Defendant SHIELDS comes into view approaching AARON  MICHAEL  PARKER. At 22:56:35, AARON  MICHAEL  PARKER rises from a prone position to sitting upright with his forearms resting on his upright knees. He is not touching anyone; he is sitting on the ground with his elbows on his knees and his head down, at which time Defendant SHIELDS can be seen, what appears to be, grabbing AARON  MICHAEL  PARKER from behind. AARON MICHAEL  PARKER puts his hands up behind his head to defend himself from Defendant SHIELDS. Defendant NORTHWAY's report is silent about the strikes assailed against AARON  MICHAEL PARKER.

49. At 22:56:55, in an apparent attempt to stave off the incoming strikes by SHIELDS and only after Defendant SHIELDS attacks AARON

MICHAEL PARKER, he stands up. He flails his arms in the direction of Defendant SHIELDS, and he backs up away from him in an attempt to get away from his delusional state.

50. AARON MICHAEL PARKER removes himself from the attack, stands straight up, and places himself in the middle of the left lane closest to the median, behind the ambulance.

51. AARON MICHAEL PARKER was not moving or resisting in any manner, which constitutes excessive force when Defendant NORTHWAY deployed his taser probes.

52. No vehicles put AARON MICHAEL PARKER'S physical safety in peril when Defendant NORTHWAY deployed his taser probes.

53. The traffic's eastbound lanes were verified closed when Defendant NORTHWAY deployed his taser probes.

54. AARON MICHAEL PARKER was not an immediate threat to himself and/or others when Defendant NORTHWAY deployed his taser probes.

55. Defendant NORTHWAY's sworn written report states that he feared AARON MICHAEL PARKER would run into the traffic. That is why he discharged the cartridge from his Taser, which struck AARON MICHAEL PARKER.

56. Defendant NORTHWAY'S and SHIELDS' reports are inconsistent with the actual events on the Leon County Sheriff's Office's helicopter video.

One could only ascertain the statements made in his sworn report to be conceived to show a light most favorable to Defendant officers.

57. The Leon County Sheriff's Department helicopter video depicts the events from the air.

58. At 22:52:40, Defendant NORTHWAY can be seen crossing W. Tennessee Avenue to the median where AARON MICHAEL PARKER is laying down in the center of the median, naked and ripping shrubs from the ground and throwing them across the eastbound travel lanes. At some point, he notices Defendant NORTHWAY and rises.

59. At 22:53:43, AARON MICHAEL PARKER can be seen walking into the westbound travel lanes. There is a stoplight directly to the east, and no cars can be seen in the video.

60. At 22:54:01, AARON MICHAEL PARKER returns and lays face down on the median until the paramedics arrive on the scene at 22:54:33, where he continues to lay in the median.

61. AARON MICHAEL PARKER continues to lay down in the median, not attempting to get up, not attempting to run in traffic, when Defendant SHIELDS approach him for no apparent reason causing AARON MICHAEL PARKER to rise again and step out into the street.

62. The LCSO helicopter footage shows AARON MICHAEL PARKER standing directly behind the ambulance, which is blocking the left lane (far westbound travel lane) with its position and lights. AARON MICHAEL

PARKER does not move; he does not walk or leave his standing position behind the ambulance in the moments leading up to and Defendant NORTHWAY deploying his taser into AARON MICHAEL PARKER. At the time, AARON MICHAEL PARKER was not a threat or resisting in any manner that necessitated excessive force or any force.

63. At 22:57:10, the radio notes that all travel lanes are now blocked. At 22:57:15, Defendant NORTHWAY deploys his taser, and AARON MICHAEL PARKER immediately falls to the ground behind the ambulance. Other than a police vehicle that pulls up to the east of AARON MICHAEL PARKER'S position, no cars can be seen moving towards him after his collapse into the street.

64. Defendant SHIELD and Defendant DEUTSCHMAN can struggle with AARON MICHAEL PARKER and repeatedly strike him. AARON MICHAEL PARKER was not a threat or resisting in any manner that necessitated that level of force.

65. At 22:52:29 (fourteen seconds later), Defendant NORTHWAY changes his rationale. Now, Defendant NORTHWAY rationalizes deploying his taser a second time against AARON MICHAEL PARKER because he is a danger to officers' safety and no longer for AARON MICHAEL PARKER'S safety.

66. Defendant DEUTSCHMAN hits AARON MICHAEL PARKER in the face and head with a closed fist multiple times, when AARON MICHAEL

PARKER was not a threat or resisting in any manner that constituted excessive force.

67. Defendant NORTHWAY deploys his taser a third time against AARON MICHAEL PARKER as he is being restrained by and now having tased AARON MICHAEL PARKER three (3) times in sixty-six (66) seconds. At the time of each taser deployment, AARON MICHAEL PARKER was not a threat or resisting in any manner that necessitated that level of force, which constitutes excessive force.

68. AARON MICHAEL PARKER never gets up on his own again.

69. Defendants SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, Defendant ROTH, SCHNEIDER, and CROUCH can be seen restraining, tackling, hitting AARON MICHAEL PARKER. He was not a threat or resisting in any manner that necessitated that level of force.

70. A controlled AARON MICHAEL PARKER was restrained by Defendants SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, Defendant ROTH, SCHNEIDER, and CROUCH putting their weight on top of him in excess of fifteen (15) minutes.

71. Defendants SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH finally released AARON MICHAEL PARKER to the paramedics; it was immediately apparent that he was no longer breathing on his own.

72. Paramedics stayed on the scene and attempted to resuscitate AARON MICHAEL PARKER before transporting him to Tallahassee Medical Center.

73. AARON MICHAEL PARKER died from his injuries nine days after the incident.

74. AARON MICHAEL PARKER'S primary diagnosis from Tallahassee Memorial Hospital's Ryan J. Hill, MD, is listed as "*anoxic brain injury, cardiac injury, acute respiratory failure, aspiration pneumonia* (when food, saliva, liquids, or vomit is breathed into the lungs or airway leading to the lungs, instead of being swallowed into the esophagus and stomach), *acute kidney injury, thrombocytopenia, Ischemic Hepatitis* (damage throughout the liver caused by inadequate oxygen)."

75. AARON MICHAEL PARKER'S medical examiner's report details further information such as "*severe cerebral edema with severe vascular congestion a congestive hemorrhage; blunt-force trauma; acute aspiration pneumonia of the right lung; and **FOUR** conductive electrical dart injuries that lay on his superior right flank, inferior right abdominal wall, superior posterior lateral hip, and posterior lateral right ankle.*"

76. Investigator Paul Osborn of the TPD was assigned to investigate the incident.

77. An external, independent investigation was never performed regarding the in-custody death of AARON MICHAEL PARKER.

78. AARON MICHAEL PARKER'S parents were led to believe that Investigator Osborn was working to benefit AARON MICHAEL PARKER and his family to uncover the truth and not the benefit of the TPD pursuant to multiple conversations with the family.

79. The family had not seen the helicopter video until the undersigned provided them with a copy nearly 3 ½ years after AARON MICHAEL PARKER'S death, despite having requested it multiple times.

80. TPD found no wrongdoing on the part of its officers. The report by Investigator Osborn is a mere recitation of the biased reports by the officers involved and subjective opinions regarding AARON MICHAEL PARKER'S medical condition.

81. The report is written from a subjective point of view, casting the officers most favorably. The report does not even mention AARON MICHAEL PARKER'S medical examination findings but merely ends the report with, "*This investigation will be administratively cleared based on the findings cited above*."

82. In the Use of Force Report, dated February 19, 2018, Defendant CLAYTON acknowledged they did not review the aerial video of the incident when determining whether the officers' used reasonable force. However, they were readily available when deciding on the incident, relying only on the Defendant officers' reports.

83. Defendant CLAYTON admits that he did not watch the aerial footage by reporting that "*Based on review of the available reports, the response to resistance was reasonable. I am aware there was a video from AIR1; however, I have no ability to access their system to review it,*" the report does not even mention AARON MICHAEL PARKER'S injuries or death.

84. The TPD did not use the assistance of the Florida Department of Law Enforcement (FDLE) to perform an independent investigation regarding the in-custody death or taser use regarding AARON  MICHAEL PARKER.

85. In 2014, TPD was aware of the ongoing, systematic issue with their police officers and the use of excessive force. The TPD launched a review of its department using the Police Executive Research Forum (PERF) to provide a review and assessment of TPD policies and procedures.

86. In the Summary of recommendations, the PERF suggested that the TPD conduct department-wide in-service training for all sworn personnel regarding the changes to use-of-force policy and practice that are put in place due to the assessment.

87. The PERF recommended that the "*TPD shift from a policy based only on a use-of-force matrix, or continuum, to a system based on the concept of "objective reasonableness," as defined in the US Supreme Court's landmark 1989 case Graham v. Connor. Objective reasonableness requires officers to gauge the level of a subject's resistance and respond*

*with the appropriate level of force based on the totality of circumstances."* The TPD never adopted the recommendations of PERF despite the department-wide controversy surrounding in-custody deaths and the use of force within the department.

88. The PERF recommended that the TPD improve "*General Order 60, Use of Force, including Chapter 776, Florida Statutes, Justifiable Use of Force, and Conducted Energy Weapons by clarifying or adding more precise definitions of key terms."* The TPD never adopted the recommendations of PERF despite the department-wide controversy surrounding in-custody deaths and the use of force within the department.

89. The PERF recommended that the TPD revise "*General Order 60, VIII, D regarding Use of Force to be more specific about how a policy violation will be investigated. Stating, the policy should reflect complaints of excessive or inappropriate use of force that the Internal Affairs Unit will investigate*." The TPD never adopted the recommendations of the PERF despite the department-wide controversy surrounding in-custody deaths and the use of force within the department.

90. The PERF recommended "*a number of enhancements to the TPD's Electronic Control Weapon (ECW) policy, General Order 7, Electronic Control Device, which includes the description and use of tasers*." The TPD never adopted the recommendations of PERF despite the

department-wide controversy surrounding in-custody deaths and the use of force within the department.

91. The PERF recommended that officers attend "*Mental Health First Aid training to learn the signs of mental health illness and addiction. This training also teaches officers how to assess a mental crisis and resources to help persons with mental illness*." The TPD never adopted the recommendations of PERF despite the department-wide controversy surrounding in-custody deaths and the use of force within the department.

92. The PERF recommended that the City and the TPD establish "*plans to form crisis intervention teams that pair police officers with mental health care providers*." The TPD never adopted the recommendations of PERF despite the department-wide controversy surrounding in-custody deaths and the use of force within the department.

93. After the PERF review and despite being aware of the significant issues within their department, the TPD failed to change the policies, failed to train officers, and continued to allow unqualified officers to patrol the City under the color of law.

94. The ongoing, systematic, widespread conditions within the TPD regarding excessive force and failure to adopt policies and procedures caused AARON MICHAEL PARKER'S death.

95. According to Defendant NORTHWAY, AARON MICHAEL PARKER was initially tased for his own safety, which is not against TPD policy, but

contrary to Fla. Stat. §943.1717, use of dart-firing stun guns, which reads:

*(1)   A decision by a law enforcement officer, correctional officer, or correctional probation officer to use a dart-firing stun gun must involve an arrest or a custodial situation during which the person who is the subject of the arrest or custody escalates resistance to the officer from passive physical resistance to active physical resistance and the person: (a) Has the apparent ability to physically threaten the officer or others; or (b) Is preparing or attempting to flee or escape.*

96.  The TPD policy contradicts Florida Statute and, at the time, read, "*Conducted Energy Weapons (CEW)   a. Officers are prohibited from using a CEW to overcome passive resistance. b. Officers may use a CEW to overcome a person's active resistance in arrest, custodial, and detention situations, only when: 1) The officer reasonably believes the person has the apparent ability to physically harm any person, or 2) The person has taken some overt physical action in an attempt to flee or escape.*

97.  The TPD issued Defendant NORTHWAY an AXON X2 taser to use while on duty.

98.  Defendant NORTHWAY was certified by the TPD to use the AXON X2 taser.

99.  Defendant NORTHWAY unnecessarily used the department-issued taser against AARON  MICHAEL  PARKER three times during the incident

described in this Complaint, causing him significant pain and eliminating his ability to move freely.

100. Defendant NORTHWAY fired the first of three taser probes against AARON MICHAEL PARKER "*for his safety*," contradicting Florida law but not contradicting TPD policy, or lack thereof.

101. The TPD conducted their own internal in-custody death investigation with little investigatory techniques applied, as in this instant case, where Investigator Osborn's complete report consists of twenty (20) pages that provided vague details, littered with "copied and pasted" excerpts from Defendant officers' reports and interviews with friends and family as to what AARON MICHAEL PARKER may have been doing leading up to the incident, which is irrelevant to the injuries sustained during his illegal detention.

102. The superficial investigation by the TPD failed to identify Defendant NORTHWAY'S justification for firing at AARON MICHAEL PARKER despite violating Florida Statute *§943.1717*.   This investigation was nothing more than an illegal conspiracy to cover up the wrongful killing of AARON MICHAEL PARKER.

103. The TPD cleared the actions of Defendant NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH after the superficial investigation by Investigator Osborn, ratified, and otherwise condoned their conduct.

104. The TPD failed to inform the CITY of the in-custody excessive force situation against AARON MICHAEL PARKER until he died nine days after the incident.

## COUNT I
## POLICY AND PRACTICE RATIFICATION
### (City of Tallahassee)

105. Plaintiff re-alleges the Common Allegations of Facts above as fully set forth herein.

106. Plaintiff is entitled to relief against Defendant CITY pursuant to 42 USC 1983 for violation of the Fourth Amendment because the CITY, in its policies and procedures, supervision, training, and discipline, hiring, and retention, or lack thereof, was deliberately indifferent to the known risks of serious harm to AARON MICHAEL PARKER or other persons in like circumstances.

107. The TPD did not train Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, or CROUCH on de-escalating crises with mentally ill or intoxicated citizens, excess force, use-of-force, mentally ill or intoxicated citizens, excited delirium, or appropriate physical control techniques causing AARON MICHAEL PARKER'S death.

108. The TPD failed to train its officers on the use of tasers according to widely adopted standards, causing AARON MICHAEL PARKER'S death.

109. By these acts, the Defendant CITY deprived AARON MICHAEL PARKER of the rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution, in that Defendants, CLAYTON, NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general and AARON MICHAEL PARKER. Persons in their class, situation, and comparable position in particular, knowingly maintained, enforced, and applied an official recognized custom, policy, and practice of:

   a. Employing and retaining as police officers and other personnel, including Defendants, CLAYTON, NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written CITY Police Department policies;

   b. Of inadequately supervising, training, controlling, assigning, and disciplining Defendant CITY police officers, and other personnel, who Defendant CITY knew or in the exercise of reasonable care should have known had the propensities above and character traits;

c.  By failing to train officers, including Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH adequately, and failing to institute appropriate policies, regarding the use of excessive force, including deadly force, and on negotiating with persons suffering from a mental health emergency or, in general, on how to act during a medical emergency;

d.  By having and maintaining a policy, custom, and practice of using excessive force, Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, CROUCH, and Defendant CITY showed deliberate indifference to individuals' safety and rights, and disabilities, including excited delirium;

e.  Of totally inadequately training Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH for detaining and dealing with unarmed individuals, and training officers to demand EMT's and other professionals to administer sedatives, such as ketamine and other drugs, causing AARON MICHAEL PARKER in this case to die.

110. Because of these wrongful acts of Defendant CITY, AARON MICHAEL PARKER was deprived of liberty subjected to significant injury, indignity, pain, suffering, and death.

111. Defendant CITY misused their power, possessed by virtue of the state law and made possible only because Defendants were clothed with the authority of state law. The violation of AARON MICHAEL PARKER'S rights occurred under color of state law and are actionable under 42 USC. Section 1983.

112. Plaintiff has been forced to retain counsel and is entitled under 42 USC § 1988 to reasonable attorney's fees and costs.

**WHEREFORE** the Plaintiff seeks costs, attorney fees, demands a jury trial, under this claim, and all other damages allowed by law, including punitive damages for the conduct complained herein.

## <u>COUNT II</u>
### <u>UNREASONABLE AND EXCESSIVE FORCE (42 USC § 1983)</u>
### <u>(Individual Defendants)</u>

113. Plaintiff re-alleges the Common Allegations of Facts above as fully set forth herein.

114. Defendants SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH suppressed the body of AARON MICHAEL PARKER long enough to cause him to suffer from an anoxic

brain injury, cardiac injury, acute respiratory failure, aspiration acute kidney injury, thrombocytopenia, and Ischemic Hepatitis.

115. Defendants SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH put their entire weights AARON MICHAEL PARKER long enough to cause him to suffer irreparable kidney damage

116. Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH inflicted enough physical force against AARON MICHAEL PARKER, causing him to suffer blunt force trauma.

117. Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH failed to restrain the other Defendant officers from violations of the Plaintiff's Constitutional rights, though able to do so.

118. The conduct of Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH was willful, wanton, malicious, and done with reckless disregard for the rights and safety of AARON MICHAEL PARKER and therefore warrants the imposition of exemplary and punitive damages as to the individual Defendants.

119. Because of these wrongful acts, AARON MICHAEL PARKER was deprived of liberty subjected to significant injury, indignity, pain, suffering, and ultimately death.

120. Defendants, NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH, misused their power, possessed by virtue of the state law and made possible only because they were clothed with the authority of state law. The violation of AARON MICHAEL PARKER'S rights occurred under color of state law and are actionable under 42 USC. Section 1983.

121. Defendants, NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH, are all liable to Plaintiff for compensatory and punitive damages, including both survival damages and wrongful death damages, and all other damages allowed under 42 USC § 1983. All of the named Defendants knew or should have known that the Defendant's conduct violated AARON MICHAEL PARKER rights under 42 USC § 1983, and or it was or should have been evident that their conduct would violate AARON MICHAEL PARKER'S rights under 42 USC § 1983.

122. Plaintiff was forced to retain counsel and is entitled under 42 USC § 1988 to reasonable attorney's fees and costs.

**WHEREFORE** the Plaintiff seeks costs, attorney fees under this claim, and all other damages allowed by law, including punitive damages for the conduct complained of herein.

<u>**COUNT III**</u>
<u>**DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS**</u>
<u>**(42 USC § 1983)**</u>
<u>**(Individual Defendants)**</u>

123. Plaintiff re-alleges the Common Allegations of Facts above as fully set forth herein.

124. Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH failed to allow paramedics to render aid to an unconscious AARON MICHAEL PARKER. Instead, they acted in concert to prevent AARON MICHAEL PARKER from moving freely enough to breathe, restricted his breathing, and caused him to go without oxygen for long enough to cause his anoxic brain injury.

125. Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH failed to allow paramedics to render aid to an unconscious AARON MICHAEL PARKER. Instead, they acted in concert to prevent AARON MICHAEL PARKER from moving freely and putting their combined weights on top of him, fatal kidney injury.

126. Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH failed to allow paramedics to render aid to an unconscious AARON MICHAEL PARKER. Instead, they acted in concert to prevent AARON MICHAEL PARKER from moving freely, putting their entire weights against him and causing him to suffer a liver injury.

127. Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH failed to allow paramedics to render aid to an unconscious AARON MICHAEL PARKER. Instead, they acted in concert to prevent AARON MICHAEL PARKER from moving freely and causing him to suffer blunt force trauma.

128. Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH misused their power, possessed by virtue of the state law and made possible only because they were clothed with the authority of state law and the violation of AARON MICHAEL PARKER'S rights occurred under color of law and are actionable under 42 USC § 1983.

129. Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH are liable to Plaintiff for compensatory and punitive damages, including both survival damages

and wrongful death damages, and all other damages allowed under 42 USC § 1983.

130. All of the named Defendants knew or should have known that the Defendant's conduct violated AARON MICHAEL PARKER'S rights under 42 USC § 1983, and or it was or should have been evident that their conduct would violate AARON MICHAEL PARKER'S rights under 42 USC § 1983.

131. Plaintiff was forced to retain counsel and is entitled under 42 USC § 1988 to reasonable attorney's fees and costs.

**WHEREFORE** the Plaintiff seeks costs, attorney fees under this claim, and all other damages allowed by law, including punitive damages for the conduct complained of herein.

<u>**COUNT IV**</u>
<u>**FAILING TO INTERVENE (42 USC §1983)**</u>
<u>**(Individual Defendants)**</u>

132. Plaintiff re-alleges the Common Allegations of Facts above as fully set forth herein.

133. Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH failed to allow paramedics to render aid to an unconscious AARON MICHAEL PARKER. Instead, they acted in concert to prevent AARON MICHAEL PARKER from moving freely enough to breathe, restricted his breathing,

and caused him to go without oxygen for long enough to cause his anoxic brain injury.

134. Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH failed to allow paramedics to render aid to an unconscious AARON MICHAEL PARKER. Instead, they acted in concert to prevent AARON MICHAEL PARKER from moving freely and putting their combined weights on top of him to cause irreparable kidney damage.

135. Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH failed to allow paramedics to render aid to an unconscious AARON MICHAEL PARKER. Instead, they acted in concert to prevent AARON MICHAEL PARKER from moving freely, putting their entire weights against him and causing him to suffer a liver injury.

136. NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH used words to the effect that he was not permitted to move freely, which implied threats of force, as well as actual force, and primary means of coercion against AARON MICHAEL PARKER, so that he was restrained and deprived of liberty at all times effectively as if behind prison bars.

137. Plaintiff is entitled to relief against Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and

CROUCH because they imprisoned him against his will in violation of the Fourth Amendment of the United States Constitution.

138. Defendants, NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH, did not attempt and did not stop or otherwise prevent other officers from violations of AARON MICHAEL PARKER'S Constitutional rights, even though able to do so.

139. Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH misused their power, possessed by virtue of state law and made possible only because Defendants were clothed with the authority of state law. The violations of AARON MICHAEL PARKER'S rights occurred under the color of state law and are actionable under 42 USC § 1983.

140. Because of these wrongful acts, AARON MICHAEL PARKER was deprived of liberty and subjected to significant injury, indignity, pain, suffering, and death.

141. Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH  misused their power, possessed by virtue of the state law and made possible only because Defendants were clothed with the authority of state law. The violation of AARON MICHAEL PARKER'S rights occurred under color of state law and are actionable under 42 USC § 1983.

142. Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH are liable to Plaintiff for compensatory and punitive damages, including both survival damages and wrongful death damages, and all other damages allowed under 42 USC § 1983.

143. Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH knew or should have known that their conduct violated AARON MICHAEL PARKER s rights or it should have been evident that their conduct would violate AARON MICHAEL PARKER'S rights under 42 USC § 1983.

144. Plaintiff was forced to retain counsel and is entitled under 42 USC § 1988 to reasonable attorney's fees and costs.

**WHEREFORE** the Plaintiff seeks costs, attorney fees under this claim, and all other damages allowed by law, including punitive damages for the conduct complained of herein.

### COUNT V:
### CONSPIRACY
### (Individual Defendants)

145. Plaintiff re-alleges the Common Allegations of Facts above as fully set forth herein.

146. Plaintiff is entitled to relief against Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER,

CLAYTON, and CROUCH as they conspired to obstruct justice under 42
USC § 1985 (2) and to deprive AARON MICHAEL PARKER of his civil
rights under 42 USC § 1985 (3), by engaging in a conspiracy, otherwise
acted in concert to create a saga of the events that lead to the death of
AARON MICHAEL PARKER, including an unbiased investigation into
his in-custody death and providing sworn statements that are inconsistent
with the truth.

147. Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA,
ROBERTS, ROTH, SCHNEIDER, CLAYTON, and CROUCH conspired
to deprive AARON MICHAEL PARKER of his civil rights by narrating
a different version of events that was vastly different than captured on
aerial footage.

148. Bason on Defendants, NORTHWAY, SHIELDS, DEUTSCHMAN,
KUTCHERA, ROBERTS, ROTH, SCHNEIDER, CLAYTON, and
CROUCH willful, outrageous and malicious conduct, Plaintiff is entitled
to punitive damages against Defendants.

149. Defendants, NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA,
ROBERTS, ROTH, SCHNEIDER, CLAYTON, and CROUCH, misused
their power, possessed by virtue of state law and made possible only
because Defendants were clothed with the authority of state law. The
violations of AARON  MICHAEL  PARKER's rights occurred under the
color of state law and are actionable under 42 USC § 1983.

150.  Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, CLAYTON, and CROUCH are liable to Plaintiff for compensatory and punitive damages, including both survival damages and wrongful death damages, and all other damages allowed under 42 USC § 1983. All of the named Defendants knew or should have known that the Defendant's conduct violated AARON MICHAEL PARKER'S rights under 42 USC § 1983, and or it was or should have been evident that their conduct would violate AARON MICHAEL PARKER'S rights under 42 USC § 1983.

151.  Plaintiff was forced to retain counsel and is entitled under 42 USC § 1988 to reasonable attorney's fees and costs.

**WHEREFORE** the Plaintiff seeks costs, attorney fees under this claim, and all other damages allowed by law, including punitive damages for the conduct complained of herein.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff respectfully requests a trial by jury on all claims in this matter that may be so triable.

*Respectfully Submitted,*

*/s/John Vernon Moore/s/*
**JOHN VERNON MOORE, ESQUIRE**
Florida Bar No.: 105403
***The Law Office of John Vernon Moore, P.A.***
700 N Wickham Road, Suite 206

Melbourne, Florida 32935
Tel. (321) 529-7777
Fax (321) 529-2289
Email: CourtDocs@JMooreLegal.com
Secondary Email: John@JMooreLegal.com
*Attorney for Plaintiff*

*/s/ Patrick J. Landy s/*
**PATRICK J. LANDY, JR., ESQUIRE**
Florida Bar No.: 127377
997 S. Wickham Road
Melbourne, Florida 32904
Tel. (321) 728-4911
Email: plandy@brosslawoffice.com
*Attorney for Plaintiff*